UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JIMMIE L. BRAXTON                                    CIVIL ACTION

VERSUS                                              NO. 10-2241

SHERIFF MARLIN N. GUSMAN ET AL.                     SECTION "B" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Jimmie L. Braxton, is a prisoner currently incarcerated in the Forcht Wade Correctional Center in Keithville, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, Warden Pittman and the Parish of Orleans.  Braxton alleges that while incarcerated in the Orleans Parish Prison system ("OPP"), he was "falsely accused of a positive drug test," resulting in his transfer to a different cell block and loss of work privileges.  Plaintiff further alleges that he was denied an adequate administrative remedies procedure ("ARP") at OPP.  He seeks monetary and injunctive relief.  Record Doc. No. 1 (Complaint at ¶ IV and V).

On December 7, 2010, I conducted a telephone conference in this matter.  Participating were plaintiff pro se and Jason Wixom, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Braxton testified that he is currently incarcerated based upon an aggravated battery conviction on October 6, 2009, for which he is serving a four-year prison sentence. He confirmed that the claims he makes in this case arise from his incarceration in OPP, beginning with an event that occurred on February 10, 2010.

Braxton testified that on that day he was working as a "yank," an orderly at OPP whose job, among other things, was to serve breakfast to the other inmates. He stated that he was working with two other inmates, one of whom was found to be in possession of drugs. Braxton testified that when defendant Warden Pittman was notified that the other inmate had been found to be in possession of drugs, she summarily removed all three of the "yanks" in the group, including Braxton, from their jobs as orderlies. Braxton could not recall the name of the inmate who was found with the drugs. He stated that the inmate with the drugs had left the area where Braxton and the other orderly, an inmate named Bienemy, were still working. He said that Warden Pittman and two other officers collected the three together and concluded quickly and without investigation that all three should be "shipped . . . I'll get me some new ones."

Braxton testified that when he asked what was going on, he was told simply to return to his dorm, "'go pack your stuff,'" and he was moved from the Templeman 5 unit of OPP to the House of Detention ("HOD") unit, from where he had been transferred two

weeks earlier when he became a "yank."  Braxton said he filed a grievance in the OPP ARP, asking why he had been removed from his job as a "yank" and returned to HOD, and he received a response stating that he "was found with a positive drug test."  Braxton stated that this was false; that not only had he <u>not</u> tested positive for drugs while at OPP, he had not even been drug-tested.  Braxton's testimony in this regard has been separately corroborated by the medical report of Dr. Samuel Gore in response to my order.  Record Doc. Nos. 6 and 13.

Braxton stated that he then submitted a second ARP grievance in an attempt to "clear the matter up," but he was not permitted to proceed, and "I still could not get the situation cleared up," resulting in this lawsuit.  He said he was subsequently transferred from OPP to another facility around August 4, 2010.

Braxton said his job as a "yank" at OPP included cleaning up, buffing floors, taking out the trash and serving meals.  He said "yanks" receive no pay, and he was only on the job for about two weeks before he was wrongly removed from it.  He complained that "Warden Pittman lied" about the reason he was fired and transferred based on the false allegation that he had "dirty urine," resulting not just in the loss of his job as a "yank," but also in that "this would prevent me from going to work release" at OPP.  "The job is not really what's the most important thing here," he stated.  "What's the most

important thing is, the reason I lost the job is because of the [false] allegations the warden made against me" about the positive drug test.

Asked what damage or injury he suffered as a result of these events, Braxton testified: "First of all, this goes in my permanent record . . . my prison record.  This will always be there, that I did this, which is not true.  It's already been found that there was no such drug test ever taken. Secondly, I went back to the same place that I had originally came (sic) from [HOD]. . . . Now my family, who I am telling that I am getting myself together, that I'm gonna do my time and everything's gonna be different, now all of a sudden I'm back and I'm found with a dirty drug urine. . . Now, my family's falling away from me.  I'm going through all kind of hassle.  I'm trying to deal with the people to clear my name."  Braxton stated that he has been damaged "mentally, physically, financially." He said his financial damage occurred because his family  "stopped sending me money" as a result of this incident.  He conceded that no inmate's family is obligated to send a prisoner money, "but it is something your family does out of love, . . . they think you would learn from your mistakes," but because his family members now think he tested positive for drugs in prison, they have turned away from him and he has been hurt both "emotionally" and by their lack of voluntary financial support, since he could not buy things in the prison commissary.  He blamed Warden Pittman for his troubles because

4

she "falsified a document," namely the ARP response falsely stating that he had a positive drug test while in OPP.

Braxton reiterated that his family backed away from him and sent him no letters. "Emotionally, I felt bad," he said, "not to mention the financial aid" that he lost from his family, so that he could no longer buy snacks or other items from the commissary to supplement the prison food.  He stated that he received no write-up or other disciplinary complaint at OPP concerning the alleged positive drug test.  He said he only found out about it after filing his ARP grievance in which he inquired about why he had been removed from the job as a "yank" and transferred back to HOD.  He referred during his testimony to the written ARP grievance, which he had previously submitted to the court and which is in the court's record.  Record Doc. No. 1 (Complaint at pp. 5-9).

## ANALYSIS

I.      STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on

5

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow

6

proper cross-examination and should require that the parties properly identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or

7

under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

## II.   DUE PROCESS

To whatever extent, if any, that plaintiff may be claiming that his due process rights were violated based on false disciplinary charges, his job loss or transfer from one prison facility at OPP to another, he fails to state a claim of violation of his constitutional rights.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983).  In <u>Sandin</u>, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Sandin</u>, 515

---

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

8

U.S. at 484 (citations omitted).  Thus, in <u>Sandin</u>, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997).  "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted).  The Fifth Circuit in <u>Madison</u> held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." <u>Madison</u>, 104 F.3d at 768; <u>accord</u> <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008); <u>Dixon v. Hastings</u>, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir. 2000).  In <u>Hernandez</u> and <u>Madison</u>, the Fifth Circuit held that such restrictions do <u>not</u> represent the type of atypical, significant deprivation in which a state might create a liberty interest.  <u>Hernandez</u>, 522 F.3d at 563; <u>Madison</u>, 104 F.3d at 768.

Examples of prison hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. <u>Sandin</u>, 515 U.S. at 484.

In the instant case, Braxton's testimony and his written submissions establish that the only action taken against him based upon the false allegations of a positive drug test were his loss of his position as a prison orderly and his transfer to another section of the prison. None of these actions constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process of the type described in <u>Wolff</u> were required. <u>Sandin</u>, 515 U.S. at 484; <u>Madison</u>, 104 F.3d at 768; <u>see Johnson v. Livingston</u>, 360 F. App'x 531, 532 (5th Cir. 2010) (citing <u>Malchi v. Thaler</u>, 211 F.3d 953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."), <u>petition for cert. filed</u>, (U.S. May 8, 2010) (No. 09-10742); <u>Hernandez</u>, 522 F.3d at 563 (distinguishing the "extreme conditions" described in <u>Wilkinson</u> and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); <u>Dixon</u>, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due

10

process protections"); Payne v. Dretke, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").  No claim of violation of due process rights cognizable under Section 1983 can be stated as to these matters.

III.    INADEQUATE ARP RESPONSES

Braxton testified that, although he filed grievances through the OPP ARP, the responses he received were inadequate and in fact were based on the false finding that he had provided a positive drug test.  This complaint fails to state a claim for relief under Section 1983.  Defendants' responses to plaintiff's ARP requests do not constitute a constitutional violation.

The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995); Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995)); accord Bell v. Woods, No. 09-41000, 2010 WL 2545421, at *2 (5th Cir. June 18, 2010); Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010), cert. denied, No. 09-10742, 2010 WL 1942272 (Oct. 4, 2010). "Additionally, [plaintiff] could not show any injury from the failure [adequately] to

consider his grievances because the alleged [actions of jail officials of which] he complained . . . in the grievances did not implicate his constitutional rights." Bell, 2010 WL 2545421, at *2.

In this case, plaintiff commenced the prison's ARP concerning his complaint.  His complaint is that he was not satisfied with the response, which contained erroneous, even false information.  In the constitutional sense, an ARP, at most, may be viewed as a means of effectuating plaintiff's First Amendment right to petition the government for redress of grievances.  In this instance, plaintiff's petition was received and processed through the ARP, although the ARP did not end with the result plaintiff desired.  The Fifth Circuit has indicated that allegations that a prison official has failed adequately to follow particular prison rules, regulations or procedures, such as an ARP, cannot support a Section 1983 claim, without an independent constitutional violation.  Eason v. Thaler, 73 F.3d 1322, 1325-26 (5th Cir. 1996).  "[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process."  Stanley v. Foster, 464 F.3d 565 (5th Cir. 2006) (quoting Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996)).

No independent, nonfrivolous constitutional violation has been alleged in this case.  Thus, defendants' failures to respond adequately to Braxton's ARP in no way implicate his constitutional rights that might serve as a basis for Section 1983 relief.

12

IV.   <u>NO RIGHT TO WORK PROGRAMS</u>

Braxton complains that he lost his job as an orderly and the possibility of participation in a work release because of the false allegations the warden made against him about the positive drug test.  This complaint also fails to state a cognizable Section 1983 claim because inmates have no protected liberty interest in specific recreational, educational or rehabilitative opportunities.  <u>Lato v. Attorney Gen.</u>, 773 F. Supp. 973, 978 (W.D. Tex. 1991).

As to educational or rehabilitative services, "a state has no constitutional obligation to provide basic educational or vocational training to prisoners."  <u>Beck v. Lynaugh</u>, 842 F.2d 757, 762 (5th Cir. 1988) (citing <u>Newman v. Alabama</u>, 559 F.2d 283, 292 (5th Cir. 1977), <u>rev'd in part on other grounds sub nom.</u> <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978)); <u>accord</u> <u>Miles v. Windham Sch. Dist.</u>, 78 Fed. Appx. 418, 2003 WL 22408345, at *1 (5th Cir. 2003); <u>Honshul v. Foti</u>, 51 F.3d 1045, 1995 WL 153425, at *2 (5th Cir. 1995). Prisoners have no constitutional right to participate in educational, work release or other rehabilitation programs.  <u>Joseph v. U.S. Fed. Bureau of Prisons</u>, 232 F.3d 901, 2000 WL 1532783, at *1-2 (10th Cir. Oct. 16, 2000) (unpubl. opin. avail. on Westlaw); <u>Wishon v. Gammon</u>, 978 F.2d 446, 450 (8th Cir. 1992); <u>Beck v. Lynaugh</u>, 842 F.2d 759, 762 (5th Cir. 1988); <u>Newman v. Alabama</u>, 559 F.2d 283, 292 (5th Cir. 1977), <u>rev'd in part on other grounds sub nom.</u> <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978); <u>Oladipupo v. Austin</u>, 104 F.

13

Supp.2d 626, 638 (W.D. La. 2000).  Because Braxton had no constitutional right to work as an orderly or in any other particular job or program while housed in OPP, he fails to state claims cognizable under Section 1983.

V.    NO PHYSICAL INJURY

Braxton's written complaint sought injunctive relief.  Construed broadly, however, his written complaint and testimony indicated that he might also seek compensatory damages.  To whatever extent, if any, that plaintiff may seek general damages, his claim is deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for monetary damages.  Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e):  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." (Emphasis added).  Braxton does not allege physical injuries of any kind as a result of defendants' alleged actions in this case.

The Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as has been alleged by Braxton in this case.  Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007); Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

14

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar, 112 F.3d at 193); accord Mayes v. Travis State Jail, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008). Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they suffered were nausea and one incident of vomiting. Id. Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. Siglar, 112 F.3d at 193.

In this case, Braxton admittedly suffered no physical injuries of any kind as a result of defendants' actions. As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, Hutchins, 512 F.3d at 197-98, Braxton has not shown any constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages." Allen v. Stalder, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006)

(citing <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, plaintiff's complaint must be dismissed in this regard.

## <u>RECOMMENDATION</u>

Dr. Gore's report to the court makes clear that plaintiff's OPP prison record erroneously includes in an ARP grievance response a notation that he had a positive drug test while at OPP. The apparently erroneous notation in defendants' response to plaintiff's ARP grievance concerning a positive drug test is truly unfortunate. This court encourages defendants, in the interest of just and prudent prison administration and management and in correcting what appears to be clear error in their prison records, to take action to correct this mistake. I cannot conclude, however, that this mistake rises to the level of a constitutional violation of any kind. In the absence of a cognizable constitutional violation, this court has no authority to order defendants to correct this error or to require other relief. Accordingly, for all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. §

636(b)(1)).[2]

   New Orleans, Louisiana, this  7th  day of February, 2011.

               JOSEPH C. WILKINSON, JR.
             UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.